TAYLOR FEDERATION OF TEACHERS v TAYLOR SCHOOL
DISTRICT BOARD OF EDUCATION

OPINION OF THE COURT

1. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS—
   WORKING CONDITIONS—INCREASE IN STUDENT CONTACT—CON-
   TRACT NEGOTIATIONS—COLLECTIVE BARGAINING.

   The time a teacher is required to spend with his students is a
   working condition which directly affects the energy he must
   expend at his job, and prevents rest or performing other tasks
   essential to his teaching function; therefore, a board of educa-
   tion which unilaterally orders an increase in student contact
   time breaches a contract provision in a collective bargaining
   agreement that requires negotiation of changes in a teacher's
   working conditions.

DISSENT BY M. J. KELLY, P. J.

2. SCHOOLS AND SCHOOL DISTRICTS—LABOR RELATIONS—TEACHERS—
   WORKING CONDITIONS—CONTRACTS—USAGE AND CUSTOMS—
   SUMMARY JUDGMENT.

   *Summary judgment is inappropriate to define the contract term
   "other working conditions" in a teacher-board of education
   dispute where the board unilaterally increased student-teacher
   contact time, because interpretation of the term "other working
   conditions" depends on the intent of the contracting parties,
   including the practice, usage and custom of the school system.*

Appeal from Wayne, James L. Ryan and Wil-
liam J. Giovan, JJ. Submitted February 9, 1977, at
Detroit. (Docket No. 28917.) Decided May 4, 1977.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 48 Am Jur 2d, Labor and Labor Relations §§ 669, 671, 1204,
1205.
   68 Am Jur 2d, Schools § 56 *et seq.*
[2] 46 Am Jur 2d, Labor and Labor Relations § 957.
   73 Am Jur 2d, Summary Judgment §§ 1, 4.

Complaint by the Taylor Federation of Teachers against the Taylor School District Board of Education for an order directing defendant to bargain over alleged changes in working conditions. Summary judgment for plaintiff. Defendant appeals. Affirmed.

*Fieger, Golden & Cousens,* for plaintiff.

*William J. DeBiasi, P. C.,* for defendant.

Before: M. J. KELLY, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

R. M. MAHER, J. Defendant board of education appeals from an order below granting summary judgment in favor of plaintiff union. We affirm.

Plaintiff union represents teachers employed by defendant board. In 1972, plaintiff and defendant entered into a collective bargaining agreement. In the agreement, the board agreed that "it and its representatives will not take any action affecting other working conditions of teachers without prior adequate negotiations with the union".

At the beginning of the 1973–1974 school year, in September of 1973, the board unilaterally ordered its kindergarten teachers to increase their daily student contact time from 2-1/2 hours in the morning and in the afternoon to 2-3/4 hours in each session. The union, viewing this increase of 1/2 hour daily in student contact time as a change in working conditions, contended that the board breached the collective bargaining agreement by ordering the increase "without prior adequate negotiations with the union". The union filed a grievance, which the board denied. As provided in the collective bargaining agreement, the grievance was submitted to advisory arbitration. The arbitrator's

award found a violation of the agreement and ordered negotiation between the board and the union on the change in student contact time.

The board chose to disregard the nonbinding arbitration award. The union then began this action in circuit court. The court found a breach of the collective bargaining agreement and ordered the board to negotiate the increase in student contact time with the union. This appeal requires us to decide whether the court below erred in holding that student contact time was a working condition subject to negotiation.[1]

We note that it is not necessary to decide here whether student contact time is a term or condition of employment that would be a mandatory subject of bargaining under § 15 of the public employment relations act, MCLA 423.215; MSA 17.455(15). *Detroit Police Officers Association v Detroit,* 391 Mich 44; 214 NW2d 803 (1974). Were this question facing us, we could look to the numerous Federal and state decisions that have given meaning to the phrase "terms and conditions of employment".

There are some opinions that have dealt with the meaning of the phrase "working conditions". In *Independent Oil Workers Union, Local 117 v American Oil Co,* 296 F Supp 650 (D Kan, 1969), the issue was whether reduction of the size of the crew operating a catalytic converter was a change in a practice relative to working conditions and thus subject to arbitration under a collective bargaining agreement. The court wrote:

" 'Working conditions', a term somewhat peculiar and prevalent in the labor-management area, means the

---

[1] We have attempted, unsuccessfully, to discover the factual dispute that the board claims made summary judgment inappropriate.

panoply of the incidents of the employment relationship. * * * It is obvious that the employment of a particular number of men on a particular unit to do regular and particular services is a practice relating to working conditions." 296 F Supp at 658.

In *Employment Security Commission v Amalgamated Meat Cutters & Butcher Workmen of North America, Local 448,* 22 Ariz App 54; 523 P2d 105 (1974), the Arizona Court of Appeals had to decide whether an increase in the rate of production in a meat packing plant was a change in working conditions subject to negotiation under a collective bargaining agreement. The Court concluded that "the speed or rate at which a workman is required to perform his duties falls within the concept of his 'working conditions' ". 523 P2d at 110.

There is no doubt in our minds that the time a teacher is required to spend with his students is a working condition. It directly affects the energy he must expend at his job, and prevents him from either resting or performing other tasks essential to his teaching function. By ordering a unilateral increase in student contact time, the board breached the contract provision that required negotiation of changes in working conditions.

Affirmed. Costs to plaintiff.

J. H. GILLIS, J., concurred.

M. J. KELLY, P. J. *(dissenting)*. I respectfully dissent for the reason that I cannot subscribe to the implicit holding that definition of the contract term "other working conditions" is a matter of law to be determined on a motion for summary judgment.

The trial court in its opinion granting plaintiff union partial summary judgment stated:

"The parties agree that for at least two years prior to the issuance of the subject order, kindergarten teachers met with their charges for two and one-half hours in the morning, and two and one-half hours in the afternoon. It is suggested to the Court that such a schedule was the exception rather than the rule in the Taylor School District and that, historically, the teaching period of kindergarten teachers was two and three-quarter hours per half-day. The Court is advised by the defendant, and the matter is disputed by the plaintiff, that the historic two and three-quarter hour per half-day student contact time was administratively reduced to two and one-half hours per half-day for the academic years 1971–1972, and 1972–1973 only to accommodate an adjustment in the busing schedule which was in turn made necessary by temporary budget reductions in the Taylor system. The Board stresses the point that the order of September, 1973 restoring the student contact period to two and three-quarter hours per half-day was merely a resumption of a longstanding policy.

"The point, however, is of no significance either in the resolution of the lawsuit or in the disposition of the motion. Whether the change in student contact time was the resumption of a former practice or the institution of a new policy, and whether the Board acted reasonably or with justification in effecting a change in student contact time, is of no moment. The point is that the change was ordered, and was ordered without negotiating the matter. If the order constituted a change in working conditions, the defendant was contractually obligated to negotiate the change under Article II, Section 3 of the agreement."

*If* the order constituted a change in working conditions is the question which motivated the lawsuit. The opinion above quoted states the question as though it were an affirmative proposition. One does not reason from a question to a logical conclusion. One side contended the order was not a change in working conditions; the other side contended the opposite. At the hearing on the motion

the assistant superintendent was sworn and gave brief testimony to the effect that "As long as—it is our position, as long as it doesn't exceed the committed contact time of six hours and forty-five minutes. That is the outside perimeter of the teacher's work day. The administrative management has a right to change the time that is in that schedule." He further testified that there was no provision for release time or preparation time for kindergarten teachers:

"*The Court:* But kindergarten teacher preparation time is not specifically covered?
"*Mr. Walker:* That is correct.
"*The Court:* And never has been?
"*Mr. Walker:* And never has been.
"*The Court:* Is it specifically covered, and I recognize, I can read this thing and I will look at it again, is it specifically covered for teachers at other levels in the 1975 agreement?
"*Mr. Walker:* It is not; that is, you are referring to the elementary teachers? Yes, it is not."

The 44-page agreement between the Board of Education of Taylor School District and the Taylor Federation of Teachers for the period September 7, 1972, and September 3, 1973, which is the period in dispute reads like a basic training manual with provision for chalkboards, toilets, pianos, language labs, bandrooms, teachers' rooms, lighting, ventilation, etc., *ad nauseam.* But there is no reference whatsoever to contact time under Article XII which is indexed as including "working conditions" and covers 7-1/2 pages and no reference at all is made to the length of the work day.

In Article IX which is entitled "daily work schedule", provision is made for senior high school teachers' daily work schedule to be five 55 minute

periods; junior high school teachers' daily work schedule, five teaching assignments, a study hall and a preparation period, then:

"In the elementary schools, work loads shall be as equally balanced as possible."

No testimony was taken with regard to the balancing of the workloads of the elementary school teachers.

In that same Article IX, paragraph 11 entitled, "The Length of School Day" provides as follows:

"The length of the scheduled day shall not exceed six (6) hours and forty-five (45) minutes. If not administratively possible, then it will be negotiable."

There is no testimony of any kind regarding what was administratively possible under the circumstances but I find from what meagre testimony there was, a strong intimation that it was "administratively possible" for the kindergarten teachers to face their children for two hours and forty-five minutes in the morning and two hours and forty-five minutes in the afternoon and still have plenty of time to end their work day on a total of six hours and forty-five minutes.

It was the board's position that historically in the district, normal contact time for the kindergarten classes was two hours and forty-five minutes; that it was "long-standing policy" suspended only for two years because of an impediment in the busing schedule. Furthermore that during those two years of economic difficulty there were inadequate classrooms and it was building additional elementary classrooms. It was argued that in some places it had to double the classrooms in some elementary schools.

I would hold under the circumstances of this case that the intent of the parties, including the practice, usage, and custom of the school system is relevant to the interpretation of the contract term "other working conditions" as is amply demonstrated by the arbitrator's opinion which is full of resolutions of questions of fact. Summary judgment was inappropriate for the resolution of this dispute.

I would reverse.