PEOPLE v JOHNSON

Docket No. 65155. Submitted March 21, 1984, at Detroit.—Decided
     June 20, 1984.

     Defendant, Ulysses Johnson, was convicted following a jury trial
     in Detroit Recorder's Court of breaking and entering a building
     with intent to commit larceny therein. The trial court, Law-
     rence D. Silverman, J., sentenced defendant to from 2-1/2 to 10
     years imprisonment. Defendant appeals, alleging error in the
     trial court's denial of his motions to quash and to suppress evi-
     dence based on an allegedly illegal arrest, the trial court's
     denial of his motion for a directed verdict, and the jury in-
     structions utilized by the trial court. *Held:*

          1. The examining magistrate and trial court incorrectly ruled
     that the defendant was under arrest when he was initially
     stopped by the police. The initial stop of the defendant for
     questioning was an investigatory stop. The facts indicate that
     the police had reasonable cause to conclude that criminal
     activity may have been afoot. The action of the officers under
     the circumstances was the least intrusive means available. The
     temporary detention of defendant was reasonable. It was
     proper for the officers to stop the defendant to determine what
     he was doing in the area.

          2. There was probable cause to arrest the defendant at the
     point when he was arrested. Therefore, the trial court did not
     err when it denied the motion to suppress evidence.

          3. The trial court did not err in denying the motion for a
     directed verdict.

          4. The trial court did not err in failing to instruct the jury
     that in cases involving circumstantial evidence the evidence
     must negate every theory consistent with innocence.

          Affirmed.

1. CRIMINAL LAW — INVESTIGATORY STOPS.

     A police officer who observes suspicious conduct which leads him

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Searches and Seizures § 102.5.
[3] 75 Am Jur 2d, Trial §§ 482, 483.
[4] 30 Am Jur 2d, Evidence §§ 1125, 1172.

reasonably to conclude in light of his experience that criminal activity may be afoot may make an initial stop of the suspect for investigatory purposes.

2. CRIMINAL LAW — INVESTIGATORY STOPS.

Police officers may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest; a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officers at the time.

3. CRIMINAL LAW — MOTIONS AND ORDERS — DIRECTED VERDICT.

A trial court, when ruling on a motion for a directed verdict of acquittal, must view the evidence presented in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt.

4. CRIMINAL LAW — CIRCUMSTANTIAL EVIDENCE — BURDEN OF PROOF.

A prosecutor, in order for a jury to find the defendant guilty on the strength of circumstantial evidence, need only prove his own theory of the case beyond a reasonable doubt; he need not negate every reasonable theory consistent with innocence.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Alan L. Kaufman,* for defendant on appeal.

Before: M. J. KELLY, P.J., and BEASLEY and J. N. O'BRIEN,* JJ.

PER CURIAM. After a jury trial, defendant Ulysses Johnson was convicted of breaking and entering a building with intent to commit larceny

---

* Circuit judge, sitting on the Court of Appeals by assignment.

therein, MCL 750.110; MSA 28.305. He was sentenced from 2-1/2 to 10 years in prison, with a credit of 56 days for time already served. He appeals as of right, alleging error in the trial court's denial of his motions to quash and to suppress evidence based on an allegedly illegal arrest, the trial court's denial of his motion for a directed verdict, and the jury instructions utilized by the trial judge.

Defendant Johnson and Theophilus Tanner were arrested outside the Avondale Stark School in the City of Detroit shortly after 2:15 a.m. on August 20, 1981. At their preliminary examination the arresting officer, Raymond Woods, testified that while on patrol on August 20, 1981, he and his two partners received a radio dispatch reporting a breaking and entering in progress at the school. As the officers pulled up in front of the building, Woods saw two men, defendant and Tanner, walking near the side of the school, coming from the direction of the rear of the building. No one else was seen in the area. The officers pulled the cruiser up to the two men and Woods "detained" them, asking the defendant and Tanner what they were doing in the area. Woods had not seen anything in their possession, nor had he seen signs of breaking. Tanner apparently pointed at a brown cardboard box on the ground approximately 15 feet away and stated, "I threw the box down because it didn't belong to us." Woods looked in the box and found a tape player, a clock, some hand tools and two extension cords. His partners went to the rear of the building and discovered that a window had been pushed out and the building had been entered. Woods then arrested the two men and read them their rights.

The examining magistrate ruled that what

Woods referred to as "detaining" was actually an arrest, and because Tanner had not been advised of his right to remain silent before making his statement, he ordered it suppressed. The magistrate also found that pursuant to MCL 764.15(1)(d) and (f); MSA 28.847(1)(d) and (f), governing the arrest power of officers without a warrant, the police radio broadcast and the circumstances under which the defendant and Tanner were found provided probable cause for an arrest. The defendant and Tanner were bound over.

Subsequently, the defendant and Tanner filed motions to quash the information and suppress evidence. In support of the motions, they argued that at the time they were "detained" there was insufficient information available to the officer to form a reasonable belief that they were involved in a felony. The trial judge ruled: "I think that based upon the testimony at the preliminary examination, based on the testimony of this officer that testified, I think this officer had every right to detain these two gentlemen at this particular time and at this particular area, and if Judge Crockett determines that the detention was, in fact, an arrest, this Court's ruling is that the arrest was proper."

At trial, the box and its contents were admitted into evidence. Bronson Gentry, a Detroit Board of Education employee assigned to Avondale Stark Elementary School, identified the contents as his property. He testified that he had kept the goods in his office at the Avondale Stark School.

A security investigator employed by the board of education testified that the school had a silent alarm system which would flash in response to noise or the opening of doors. The parties later stipulated that the security company's dispatcher

had been "alerted to the control system being activated by a banging noise at 1:58 a.m on August 20, 1981". A custodian assigned to the school testified that on the afternoon prior to the breaking and entering he closed the building and turned on the alarm. The next morning, he found Gentry's plexiglass window knocked out, the office in disorder and the furniture pried open. He testified that the school's playground area was open to the public at all times, but generally was deserted at night.

Officer Raymond Woods was then called to testify. His testimony was essentially the same as that given at the preliminary examination. He testified that he and his partners drove to the school in response to a report of a breaking and entering in progress. Woods immediately observed two men walking from the rear of the school, the three officers stopped the men, Woods detained them while his partners walked to the rear of the school, Woods discovered the box approximately 15 feet away from the defendant on the grassy area of the grounds, and he then arrested the men. He testified that the box was located about 50 to 60 feet from the window. He also stated that defendant and Tanner seemed casual and were walking slowly. He noticed no one else in the area. On cross examination, he stated that defendant and Tanner were on a sidewalk approximately 20 to 25 feet from the school when they were first observed.

Woods's partner, Officer Wojichowski, gave similar testimony. He testified that the area around the school was undeveloped, the nearest residence being one-half block north. He stated that after he and his partners stopped the defendant he checked the perimeter of the school and saw no one.

The officer in charge, Officer Pruent, testified

that the plexiglass window removed from Gentry's office yielded no usable fingerprints. Neither did the box or its contents.

At the close of the prosecution's case in chief, defense counsel moved for a directed verdict. After a lengthy discussion, the motion was denied. The defense rested without calling any witnesses.

The first issue on appeal is whether the trial court erred in denying the motions to suppress evidence and quash the information. The defendant argues that at the time he was "detained" the officers did not have probable cause for an arrest. Consequently, all the fruits of the arrest including physical evidence and testimony of the police officers about the investigation conducted while defendant was detained should be suppressed.

The examining magistrate ruled that the defendant was under arrest when he was stopped because he was not free to leave. The trial judge affirmed this finding. We disagree and rule that the initial stop of the defendant for questioning was an investigatory stop.

In *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court ruled that when an officer observes suspicious conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot he may make an initial stop of that suspect for investigatory purposes. In *People v Whalen,* 390 Mich 672, 680; 213 NW2d 116 (1973), the Michigan Supreme Court quoted *Adams v Williams,* 407 US 143, 145-146; 92 S Ct 1921; 32 L Ed 2d 612 (1972):

"In *Terry* this court recognized that 'a police officer may in appropriate circumstances and in an appropri-

ate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' [392 US] *Id.,* p 22 [88 S Ct 1880]. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.,* p 23 [88 S Ct 1881]. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.,* pp 21-22 [88 S Ct 1879-1880]."

The reasonable suspicion test of *Terry* has been followed by this Court on numerous occasions. See, *e.g., People v Lillis,* 64 Mich App 64; 235 NW2d 65 (1975); *People v Terrell,* 77 Mich App 676; 259 NW2d 187 (1977); *People v Grimmett,* 97 Mich App 212; 293 NW2d 768 (1980).

In the present case, in balancing the police officers' duty to investigate possible criminal behavior with the defendant's right to be free from unwarranted police intrusion, we find that the temporary detention of defendant was reasonable. At 2:15 a.m. the officers had received a radio dispatch reporting a breaking and entering in progress at the school. The defendant was observed at the side of the school walking in a direction away from the rear of the building. The area around the school was undeveloped, the nearest residence being one-half block north. Based on these facts, we find that the officers had reasonable cause to conclude that "criminal activity may be afoot". *Terry, supra,* p 30. The action of the officers under the circumstances was the least intrusive means available. Therefore, it was proper for the

officers to stop the defendant to determine what he was doing in the area.

Following the initial stop of the defendant and Tanner, Officer Woods checked the contents of the box. His partners went to the rear of the building and confirmed the report of a breaking and entering when they found the point of entry. Woods then arrested the defendant and Tanner. We find that at that point there was probable cause to arrest the defendant. Therefore, the trial court did not err when it denied the motion to suppress.

The defendant's next argument is that the trial court erred in failing to grant the motion for directed verdict.

When ruling on a motion for a directed verdict of acquittal, the trial judge must view the evidence presented in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

Viewed most favorably to the prosecution, the evidence in this case demonstrated that a breaking and entering had occurred at the school at approximately 2 a.m., that the defendant was in the immediate area approximately 20 minutes after the school alarm went off, that a box was located about 15 feet from the defendant, that the contents of the box were taken from the school, and that no one else besides defendant and his companion was in the area. We find that the trial judge did not err in denying the motion for a directed verdict.

Defendant's final argument is that the trial judge erred in failing to instruct the jury that in cases involving circumstantial evidence the evi-

dence must negate every theory consistent with innocence. We disagree.

In *People v Edgar,* 75 Mich App 476; 255 NW2d 648 (1977), this Court indicated its strong disapproval of the rule that in circumstantial evidence cases a conviction may be had only when the prosecution negates all reasonable theories of innocence:

"We conclude that the rule [requiring that every reasonable theory of innocence be negated] is defective to the extent that it treats circumstantial evidence differently than direct evidence and to the extent that it requires the prosecution to *specifically* disprove all innocent theories. It should be sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense may produce." 75 Mich App 473-474. (Emphasis in the original.)

Accord, *People v Walker,* 93 Mich App 189; 285 NW2d 812 (1979); *People v McWilson,* 104 Mich App 550; 305 NW2d 536 (1981); *People v Kramer,* 108 Mich App 240; 310 NW2d 347 (1981); *People v Perry,* 114 Mich App 462; 319 NW2d 559 (1982).

Affirmed.