PEOPLE v SOLTIS

Docket No. 48866. Submitted October 20, 1980, at Detroit.—Decided January 28, 1981.

Bernard Soltis, Jr., was convicted of possession of phencyclidine with intent to deliver and was sentenced to prison, Kalkaska Circuit Court, William A. Porter, J. He appeals, alleging that the trial court erred in finding that he did not have standing to raise the defense of entrapment, in alternately finding that even if he did have such standing he was not entrapped, in imposing the sentence, in allowing admission of spectrophotometer test results into evidence without requiring an adequate foundation for their reliability, and in denying his motion for a *Walker* hearing during trial. *Held:*

1. The trial court did not err in finding that an informant's activities had been directed only to a codefendant and were not within the knowledge of defendant and that defendant consequently had not been entrapped.

2. The trial court did not err in imposing the sentence.

3. The trial court did not abuse its discretion in finding that the reliability of spectrophotometer evidence had been adequately established.

4. The trial court recognized that it was within its discretion to hold a *Walker* hearing during trial and did not err in denying defendant's motion therefor under the circumstances of the case.

Affirmed.

1. CRIMINAL LAW — ENTRAPMENT — STANDING.

A defendant in a criminal case does not have standing to raise a defense of entrapment where the trial court finds that an informant's activities were directed toward a codefendant and were not within the knowledge of the defendant.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 143, 144.
[2] 29 Am Jur 2d, Evidence §§ 822, 823, 825.
[3] 4 Am Jur 2d, Appeal and Error § 18.
   21 Am Jur 2d, Criminal Law §§ 440, 441.

2. Criminal Law — Evidence — Spectrophotometer Tests.

    Prerequisites for admission of the results of a spectrophotometer test into evidence in a criminal case include establishing the qualifications of the operator of the machine, the method or procedure followed in administering the test, that the test was performed within a reasonable time after a defendant's arrest, and the reliability of the testing device.

3. Appeal — Criminal Law — Walker Hearings.

    A trial court in a criminal case may entertain in its discretion a defense motion for a *Walker* hearing during trial even though no such motion was made prior to trial, and an abuse of this discretion in refusing to conduct such a hearing may be tested on appeal by a consideration of the existence of special circumstances which would have justified the hearing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Philip J. Crowley,* Prosecuting Attorney (by *Mary C. Smith,* Assistant Attorney General, Prosecuting Attorneys Appellate Service), for the people.

*Rabette & O'Dea, P.C.,* for defendant.

Before: Danhof, C.J., and M. J. Kelly and D. L. Sullivan,* JJ.

Per Curiam. On September 2, 1978, the defendant, Bernard Soltis, Jr., and William E. Wilson were charged with possession with intent to deliver phencyclidine in violation of MCL 335.341(1)(b); MSA 18.1070(41)(1)(b). Codefendant Wilson entered a plea. Defendant Soltis went to trial in Kalkaska County Circuit Court and was convicted of the crime charged on October 12, 1979. On December 10, 1979, defendant was sentenced to a term of from three to seven years in prison and appeals of right.

Defendant contends in his first two specifications

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of error that the trial court erred in finding that he did not have standing to raise the defense of entrapment and in its concluding that alternatively, even if defendant did have standing he was not in fact entrapped. We find that the trial court did not err in finding that the informant's activities were directed only to the codefendant and that they were not within the knowledge of defendant Soltis whose furnishing for sale the controlled substance in this matter appears to have been solely the conducting of an illegal enterprise for profit.

We find that the trial court committed no error in imposing defendant's sentence which was within the proper minimum and maximum limits for the crime charged.

The defendant next argues that an adequate foundation for the reliability of the spectrophotometer test results was not established. In applying the rules announced in *People v Krulikowski,* 60 Mich App 28; 230 NW2d 290 (1975), we conclude that the trial court did not abuse its discretion in finding that the machine's reliability had been adequately established.

Finally, defendant claims that the trial court erred by denying his motion for a *Walker*[1] hearing. Although a *Walker* hearing contemplates a pretrial motion, under proper circumstances the trial court should exercise its discretion to entertain a motion to suppress at trial. *People v Mitchell,* 44 Mich App 679, 683; 205 NW2d 876 (1973), *rev'd on other grounds,* 402 Mich 506; 265 NW2d 163 (1978). There it was said:

"Whether a trial judge abuses his discretion by not

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

turning aside from a criminal case to conduct a sepa-
rate hearing upon the admissibility of evidence may be
tested by the existence of 'special circumstances'[2] justi-
fying the delay. Although this concept has not been
fully defined, the primary example is offered in *People
v Ferguson, supra,* a case where the factual circum-
stances constituting the illegality are not known prior
to trial."

"[2] *People v Ferguson,* 376 Mich 90, 94 [; 135 NW2d 357] (1965)."

The transcript reveals that the matter was first
discussed in chambers where legal precedents were
examined. Defense counsel stated as follows:

"*Mr. Rabette:* We have discussed the matter—

"*Court:* Sure.

"*Mr. Rabette:*—in Chambers on several occasions
since I first raised the issue. I can only add to that that
the cases that I've brought to the Court's attention
indicate to me that there should be some notice given to
the Defense of the Prosecutor's intention to use a
purported confession at trial.

"*Court:* There's a case that indicates that notice
should be given by the Prosecutor?

"*Mr. Rabette:* Your Honor, I ca—I can't say that
there' *[sic]* a clear directive that it—it must be given—

"*Court:* Or, even should?

"*Mr. Rabette:* The rationale underlying two cases Peo-
ple v Shipp [21 Mich App 415; 175 NW2d 529 (1970)] and
People v Caravel [Carabell] [11 Mich App 519; 161 NW2d
776 (1968)] placed substantial reliance in both those cases
on such notice of intention to use a confession at trial. I
believe it was the Caravel *[sic]* case where the Defendant
sought to raise the issue for the first time on appeal—had
not objected prior to trial or at trial—and, in addition—
even given that, they never raised the objection. The
Court, in its analysis, looked at the further factor that a—a
notice of intent had been provided and they said where in
addition it had not been provided. I realize the difficult po-
sition that the Court is in hearing this matter raised for the
first time on the—it was raised for the first time right on

the eve of trial, I believe—just before we began selecting a jury if I re—if my recollection is correct.

"*Court:* I had understood that we had selected the jury and—and, if I'm wrong—

"*Mr. Rabette:* Yeah.

"*Court:* —tell me—that we had selected a jury and before opening statement, then the Prosecutor—

"*Mr. Rabette:* Your—your Honor's correct—your Honor's correct—right—we had already selected a jury and it was formed. I, personally, had no knowledge that the Prosecutor was in possession of a purported confession.

"*Court:* My—the next obvious question is, did you ever ask your client if he made a statement?

"*Mr. Rabette:* I don't recall asking him that specific question—no.

"*Court:* Well, did he ever communicate—tell you that he had?

"*Mr. Rabette:* No, he—without going into too much detail, your Honor—

"*Court:* Excuse me—I didn't—

"*Mr. Rabette:* Yeah.

"*Court:* —obviously, mean to prod or intrude in areas that—

"*Mr. Rabette:* No—no.

"*Court:* —he—

"*Mr. Rabette:* OK. What he—what he did inform me about was a statement that had been obtained—Mr. Soltis says—in exchange for dismissal of these charges.

"*Court:* I mean in advance of—

"*Mr. Rabette:* But, that was at a—yes, this was the first time I talked to Mr. Soltis. But, it had to do with the conduct of a Kalkaska County Deputy. He did not inform at that time that he had made a statement to the police regarding his own culpability, and I can't recall that I asked him precisely that question. I did bring up the matter of statements and that was what he informed me of—the—which, apparently, now—I understand—was a subsequent statement—one that occurred after the alleged confession. That's the only statement that I was aware of. It did not have to do

with his own culpability. It had to do with another matter. I realize I'm the third attorney on the case. I—I can say, again, that Mr. Valentino's file reflected—certainly not the purported confession, itself. Nor did it reflect any knowledge on his part that such a purported confession existed. What consultations he may have had with Mr. Soltis about it, I don't know."

Obviously the trial court did recognize that it was within its discretion to hold a hearing. The court remarked about six or seven adjournments preceding this trial and that it was loathe to discharge the jury, assuming the defendant waived any double-jeopardy considerations. The court cited the responsibility of the defendant to communicate the information to his attorney and for the attorney to question the defendant about his statements and confessions. The defendant must have known that he did make a written statement because he executed it. Under the circumstances, we find no error. The trial court did not abuse its discretion.

Affirmed.