PEOPLE v LETTS

Docket No. 60204. Submitted October 7, 1982, at Lansing.—Decided December 20, 1982.

Roderick D. Letts was charged with three counts of delivery of a controlled substance, Wexford Circuit Court. Defendant moved to dismiss the charges, claiming entrapment. A hearing revealed the following facts. Defendant was incarcerated in the Wexford County Jail for an unrelated matter. A Wexford County Sheriff's Department undercover officer, who was using the alias David Thorne, was lodged in the Wexford County Jail on a sham commitment. Thorne had received a sentence purportedly for possession of marijuana. While in jail, Thorne gained defendant's trust, induced him into believing that he was a drug user, and convinced defendant to sell him drugs upon their release. Subsequent to their discharge from jail, Thorne and defendant visited Thorne's apartment where they smoked marijuana. Soon thereafter, defendant delivered LSD to Thorne. After this transaction, Thorne remained in communication with defendant and purchased small quantities of marijuana from him. Thorne also informed defendant of his desire to acquire cocaine but was unsuccessful in his efforts to entice defendant to purchase cocaine from a third person. The court, William R. Peterson, J., dismissed the charges. The people appealed. *Held:*

The Supreme Court has adopted an objective test of entrapment, that where the defendant has proved entrapment it is not permissible for the government to show in rebuttal that the officer guilty of incitement of the crime had reasonable cause to believe the defendant was a person disposed to commit the offense. The trial court's finding of entrapment should not be overturned on appeal unless clearly erroneous. The court's findings were not clearly erroneous.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 206.
[2] 21 Am Jur 2d, Criminal Law § 202.
[3] 21 Am Jur 2d, Criminal Law §§ 203-206.
[4] 5 Am Jur 2d, Appeal and Error §§ 772, 774.

1. CRIMINAL LAW — ENTRAPMENT.

    The Supreme Court has adopted an objective test of entrapment, that where the defendant has proved entrapment it is not permissible for the government to show in rebuttal that the officer guilty of incitement of the crime had reasonable cause to believe the defendant was a person disposed to commit the offense.

2. CRIMINAL LAW — ENTRAPMENT — PURPOSE OF DOCTRINE.

    The purpose of the entrapment doctrine is to deter unlawful government activities and to preclude the implication of judicial approval of impermissible government conduct.

3. CRIMINAL LAW — ENTRAPMENT — PUBLIC POLICY — POLICE CONDUCT.

    The defense of entrapment is not interjected to establish the absence of an essential element of the crime charged but to present facts collateral or incidental to the criminal act which justify acquittal on the ground of an overriding public policy to deter instigation of crime by law enforcement officers in order to get a conviction.

4. APPEAL — ENTRAPMENT — CRIMINAL LAW.

    A trial court's finding of entrapment should not be overturned on appeal unless clearly erroneous.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Joseph G. Harris, Jr.,* Prosecuting Attorney, for the people.

*Roger S. Canzano,* for defendant.

Before: BEASLEY, P.J., and M. J. KELLY and W. S. WHITE,* JJ.

BEASLEY, J. After being charged in three different informations with delivery of controlled substances, in violation of MCL 333.7401, subds (1), (2)(b), and (2)(c); MSA 14.15(7401), subds (1), (2)(b), and (2)(c), defendant, Roderick Dean Letts, was bound over for trial. Following an entrapment hearing, the trial court filed a written opinion

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granting defendant's motion for dismissal of the charges. From this holding, the prosecutor appeals as of right.

A review of the transcript of the entrapment hearing indicates that on August 30, 1980, defendant was incarcerated in the Wexford County Jail for contempt of the district court resulting from his failure to pay a fine and costs that were imposed for a reckless driving conviction. Shortly thereafter, on September 8, 1980, a Wexford County Sheriff's Department undercover officer, who was using the alias David Thorne, was lodged in the Wexford County Jail on a sham commitment. Thorne received a four-day sentence from the same district judge purportedly for possession of marijuana. While in jail, Thorne gained defendant's trust, induced him into believing that he was a drug user, and convinced defendant to sell him drugs upon their release.

Subsequent to their discharge from jail on September 11, 1980, Thorne and defendant visited Thorne's apartment where they smoked marijuana. Soon thereafter, defendant delivered LSD to Thorne. After this transaction, Thorne remained in communication with defendant and purchased small quantities of marijuana from him. Thorne also informed defendant of his desire to acquire cocaine, but was unsuccessful in his efforts to entice defendant to purchase cocaine from a third person.

On October 23, 1981, warrants were issued for defendant's arrest for delivery of LSD on September 11, delivery of marijuana on October 20, and delivery of marijuana on October 21.

In granting defendant's motion to quash the informations, the trial court found that the conduct of the police agency, by which defendant was

induced to sell drugs to the undercover officer, constituted entrapment.

In *People v Turner,*[1] the Michigan Supreme Court, relying on the dissenting opinion of Justice Potter Stewart in *United States v Russell,*[2] adopted the objective test for entrapment:

"In my view, a person's alleged 'predisposition' to crime should not open him to government participation in the criminal transaction that would be otherwise unlawful.

\* \* \*

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person induced—I think entrapment has occurred. For in that situation, the Government has engaged in the impermissible manufacturing of crime, and the federal courts should bar the prosecution in order to preserve the institutional integrity of the system of federal criminal justice."

The design of the entrapment doctrine is to discourage law enforcement officers from engaging in wrongful conduct and to avoid the implication that the judiciary extends its approval of impermissible governmental activity.[3] In *People v D'Angelo,*[4] the Court stated:

"When an accused claims entrapment he is asserting, in essence, entitlement to the benefit of a judicial policy that his claim, if true, is a bar to the prosecution of the

---

[1] 390 Mich 7, 21; 210 NW2d 336 (1973).

[2] 411 US 423, 445; 93 S Ct 1637; 36 L Ed 2d 366 (1973).

[3] *People v D'Angelo,* 401 Mich 167, 173; 257 NW2d 655 (1977); 21 Am Jur 2d, Criminal Law, § 204, pp 371-372.

[4] *People v D'Angelo, supra,* p 179.

case. His claim does not involve an assessment of guilt or innocence and, in fact, is irrelevant to it. It is in that respect that the entrapment claim is unique and distinguishable from the more common defenses in criminal cases such as alibi, insanity, self-defense, lack of specific intent and the like, which assert the absence of one or more elements of the crime charged and involve therefore the assessment of guilt or innocence. The defense of entrapment is not interjected to establish the absence of an essential element of the crime but to present facts collateral or incidental to the criminal act which justify acquittal on the ground of an overriding public policy to deter instigation of crime by enforcement officers in order to get a conviction."

The defendant has the burden of proving an entrapment claim by the preponderance of the evidence, and an appellate court applies the "clearly erroneous standard" to the trial court's ruling on the motion.[5] The objective standard of entrapment does not, ipso facto, preclude the employment of undercover agents.[6] Rather, it serves to deter conduct which is so reprehensible that it cannot be condoned by the judicial system.[7]

In *People v Alford*,[8] an undercover officer posed as an overweight patient in order to receive narcotics for himself and others from the defendant physician. The *Alford* Court, in reversing the trial court's ruling that the defendant was entrapped, ruled that the officer did not attempt to form a special friendship with the physician as a means of

[5] *People v Artuso,* 100 Mich App 396, 402; 298 NW2d 746 (1980), *lv den* 411 Mich 870 (1981), *cert den* 454 US 877; 102 S Ct 357; 70 L Ed 2d 187 (1981).

[6] *Lewis v United States,* 385 US 206, 208-209; 87 S Ct 424; 17 L Ed 2d 312 (1966); *People v Alford,* 405 Mich 570, 590; 275 NW2d 484 (1979); 8 Michigan Law & Practice, Criminal Law, § 67, p 136.

[7] *People v Turner, supra,* pp 21-22; 8 Michigan Law & Practice, Criminal Law, § 67, pp 134-135; 21 Am Jur 2d, Criminal Law, § 206, pp 375-379.

[8] *People v Alford, supra.*

promoting the delivery of controlled substances. The *Alford* Court held that the conduct of the undercover officer was not so reprehensible as to amount to entrapment as a matter of law, since, instead of inducing defendant Alford into furnishing him with narcotics, the officer merely appeared at defendant's medical office, where he requested and received controlled substances.

In *People v White*,[9] the Court held that entrapment occurred because the police officers manufactured or instigated the crime. In that case, an undercover officer approached the defendant and asked to purchase controlled substances from him. After the officer gave the defendant money, the parties agreed to meet several days thereafter. Upon the defendant's failure to appear at the scheduled meeting, the officer again made contact with him. When the defendant explained that he did not acquire the drugs because he lacked transportation, the officer transported him from Oscoda to Detroit and furnished him with additional money to purchase a larger quantity of drugs than were initially requested. After the transaction was consummated, defendant was arrested and charged with delivery of heroin.

In the within matter, we conclude that the trial court's finding of entrapment was not clearly erroneous. The trial judge made strong, clear findings that were fully supported by the evidence. The police agency herein manufactured the crimes by placing an undercover officer in jail with defendant for the purpose of persuading defendant to sell him drugs. The officer established a trusting relationship with defendant and maintained the friendship subsequent to defendant's release from

[9] 411 Mich 366; 308 NW2d 128 (1981).

jail. The police agency's actions transcended merely providing defendant with an opportunity to commit a crime. We find that the well designed scheme, like the factual setting in *White, supra,* resulted in far more than giving defendant an opportunity to commit a crime; rather, the police "manufactured" the crime.

Affirmed.