PEOPLE v MATTHEWS

Docket No. 73715. Submitted February 6, 1985, at Lansing.—Decided
    May 20, 1985.

    Horace Matthews, Jr., was convicted of delivery of between 225
    and 650 grams of a mixture containing cocaine, Oakland Cir-
    cuit Court, Robert L. Templin, J. The charges against defen-
    dant and two codefendants arose from a narcotics transaction
    involving an undercover police officer. Defendant appealed,
    alleging several errors. *Held:*

        1. The defendant had standing to argue a defense of entrap-
    ment even though the police activity complianed of was di-
    rected toward a codefendant, because the charges against all
    the defendants arose from the same police conduct. Under the
    circumstances of this case, however, there was no entrapment.

        2. Sufficient evidence was presented to prove that the defen-
    dant aided and abetted in the delivery of the cocaine. Further,
    the examining magistrate did not abuse his discretion in deter-
    mining probable cause and in binding the defendant over for
    trial.

        3. Defendant failed to object to the prosecutor's comments
    regarding certain of the people's witnesses or to request a
    curative instruction, and no manifest injustice was shown to

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21 Am Jur 2d, Criminal Law § 206.
[1] 29 Am Jur 2d, Evidence § 156.
    Adequacy of defense counsel's representation of criminal client
    regarding entrapment defense. 8 ALR4th 1160.
[4] 21 Am Jur 2d, Criminal Law § 167.
[5] 30 Am Jur 2d, Evidence § 1172.
[6] 5 Am Jur 2d, Appeal and Error §§ 553, 623, 624.
[7] 81 Am Jur 2d, Witnesses § 563.
[8] 21 Am Jur 2d, Criminal Law § 481.
[9] 21 Am Jur 2d, Criminal Law § 539.
[10] 75 Am Jur 2d, Trial § 306.
    Propriety, and prejudicial effect of, comments by counsel vouching
    for credibility of witness. 81 ALR2d 1240.
[11] 29 Am Jur 2d, Evidence § 346.
[12] 29 Am Jur 2d, Evidence § 251.

result from the comments. Therefore, defendant's allegation of error was waived.

4. Testimony regarding the character for truthfulness and veracity of the people's witness was admissible since the witness's credibility had previously been attacked by the defense.

5. Testimony regarding defendant's unemployment at the time of the offense, while improper, was brief, not repeated, and not objected to by defendant. The admission of the testimony does not require reversal.

6. The trial court did not err in denying defendant's motion to dismiss based upon an alleged violation by the prosecutor of a discovery order. There is no indication of how the evidence sought, if it indeed existed, could have been exculpatory.

7. The mandatory 20-year minimum sentence for delivery of between 225 and 650 grams of a mixture containing cocaine does not violate the defendant's right to due process and equal protection nor does it constitute cruel and unusual punishment.

Affirmed.

T. M. BURNS, J., dissented. He would hold that defendant's conviction should be reversed because the prosecutor improperly attempted to bolster the credibility of a police officer's testimony, because testimony regarding the police officer's reputation for truthfulness was beyond the scope of permissible character testimony, and because admission of the testimony regarding the defendant's unemployment resulted in manifest injustice.

### OPINION OF THE COURT

1. CRIMINAL LAW — DEFENSES — ENTRAPMENT — OBJECTIVE TEST FOR ENTRAPMENT.

The objective test for entrapment focuses on whether the actions of the police were so reprehensible under the circumstances that public policy will not permit the defendant's conviction to stand; under this test the defendant's guilt or innocence is irrelevant, and the burden is on the defendant to show by a preponderance of the evidence that he was entrapped.

2. CRIMINAL LAW — DEFENSES — ENTRAPMENT — MULTIPLE DEFENDANTS.

A defendant may lack standing to raise a defense of entrapment where a police informant's activities were directed only against a codefendant and were not within the knowledge of the defendant, but where charges against a defendant and codefendant arise from the same impermissible police conduct it is proper for the trial court to apply its findings on the issue of entrapment to both defendants.

3. CRIMINAL LAW — DEFENSES — ENTRAPMENT.

The objective test for entrapment does not preclude the use of undercover agents.

4. CRIMINAL LAW — AIDING AND ABETTING.

Aiding and abetting the commission of a crime requires that one take conscious action to make the criminal venture succeed.

5. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE.

Evidence is sufficient to support a criminal conviction if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense may produce.

6. CRIMINAL LAW — APPEAL — PRESERVING QUESTION.

Failure of a defendant to object to allegedly improper comments made by the prosecutor during closing argument or to request a curative instruction precludes appellate review unless a miscarriage of justice will rusult.

7. WITNESSES — REPUTATION EVIDENCE — CREDIBILITY OF WITNESSES.

The credibility of a witness may be attacked or supported by evidence of reputation, but the evidence may refer only to character for truthfulness or untruthfulness, and evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise (MRE 608[a]).

8. STATUTES — CONTROLLED SUBSTANCES — PLEA BARGAINING.

The statutory limitation on a prosecutor's authority to plea bargain with respect to certain narcotics offenses does not violate the constitutional doctrine of separation of powers (Const 1963, art 3, § 2; MCL 333.7415; MSA 14.15[7415]).

9. CRIMINAL LAW — SENTENCING — CONTROLLED SUBSTANCES — CONSTITUTIONALITY OF SENTENCE.

The mandatory 20-year minimum sentence for delivery of between 225 and 650 grams of a mixture containing cocaine does not violate a defendant's right to due process and equal protection nor does it constitute cruel and unusual punishment (MCL 333.7401[2][a][ii]; MSA 14.15[7401][2][a][ii]).

DISSENT BY T. M. BURNS, J.

10. CRIMINAL LAW — PROSECUTOR'S ARGUMENT — VOUCHING FOR WITNESS.

*A prosecutor may not argue that a police officer's testimony is*

*credible where the argument is not based on any permissible inferences from the evidence presented at trial.*

11. WITNESSES — REPUTATION EVIDENCE.

*Evidence of a witness's reputation as to honesty is not admissible to show that the witness had a good reputation for truthfulness.*

12. CRIMINAL LAW — EVIDENCE — DEFENDANT'S UNEMPLOYMENT.

*Testimony that a defendant was unemployed at the time of the charged offense is not relevant to the defendant's guilt or innocence and may constitute error requiring reversal of the defendant's conviction where manifest injustice is shown.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Warren H. Siegel,* for defendant on appeal.

Before: DANHOF, C.J. and T. M. BURNS and BEASLEY, JJ.

DANHOF, C.J. Defendant was convicted on April 5, 1983, of delivery of between 225 and 650 grams of a mixture containing cocaine, in violation of MCL 333.7214(a)(iv) and 333.7401(1), (2)(a)(ii); MSA 14.15(7214)(a)(iv) and 14.15(7401)(1), (2)(a)(ii). On June 9, 1983, defendant was sentenced to prison for a mandatory term of 20 to 30 years. Defendant appeals as of right.

We note preliminarily that on June 4, 1984, this Court remanded the case on its own motion "for an explanation of the [trial] court's reasons in imposing this sentence". Oakland County Circuit Court Judge Robert L. Templin returned a letter explaining the sentence on September 25, 1984.

Three defendants were involved in this case: Horace Matthews, Jr., Andres O. Perez and Namir Zaiber.

## FACTS

The prosector's principal witness was Michigan State Police Trooper Terry Michael Saldana who was an undercover officer for the narcotics unit of the criminal investigation section. On August 11, 1982, he was introduced to Zaiber by Officer Ron Thomas of the Dearborn Police Department. The meeting occurred at Sinbad's Party Store, which was owned by Zaiber's uncle. The Dearborn police had arranged to purchase a quarter ounce of cocaine from Zaiber prior to this meeting. The cocaine was eventually purchased from Zaiber's girl-friend. Zaiber indicated that he had access to large quantities. What followed was a series of small purchases by Saldana from Zaiber. Saldana testified that he did not arrest Zaiber because he was hoping to determine Zaiber's source.

Eventually, Saldana told Zaiber he needed larger quantities, and Zaiber informed him of a large cocaine shipment arriving on November 3, 1982. Saldana asked Zaiber to contact him then, but Zaiber preferred that Saldana call him. Saldana did so and asked for 10 ounces of cocaine. Zaiber made further calls and reported that 10 ounces would cost $2,500 per ounce, and anything over 10 ounces would be $2,400 per ounce. However, Zaiber also told Saldana that his partner did not want to proceed with the deal because he was worried that Saldana was a police officer, but that he (Zaiber) would attempt to take care of Saldana anyway.

Saldana called Zaiber the next day, November 4, 1982, at Zaiber's request, and told Zaiber that he had another source for cocaine in an attempt to put some pressure on Zaiber. Zaiber informed Saldana that he could obtain better quality cocaine. Zaiber called back at about 3:00 p.m. and

told Saldana that Zaiber's partner wanted to speak to him. Saldana told the partner that he was going to check out some cocaine elsewhere and that the partner should call back at 4:30. When Saldana did not receive the call at 4:30, he called Zaiber back at 4:35. Zaiber indicated that he would contact his partner. Five minutes later, Saldana received a phone call from a person who identified himself as "Jake". Saldana recognized the voice as belonging to the same person he had talked to earlier, Zaiber's partner. Jake requested a meeting later that evening at a Wendy's Restaurant on Greenfield Road near Eight-Mile Road.

Saldana arrived early. He drove into the Wendy's parking lot, waited a few minutes, then went inside. Seeing no one there, he drove around to the other side. A Dodge Charger pulled in and Zaiber called to him from the backseat. Defendant and Perez were in the front seat. Saldana got out of his car and sat in the backseat of the Charger, which belonged to Perez. Zaiber introduced Saldana to defendant and Perez. Perez asked Saldana how much cocaine he wanted, indicating that he had kilogram quantities. Saldana said he wanted 11 ounces at most, for $26,000, which Perez said was okay since this was Saldana's first transaction. Defendant indicated that Zaiber had come along so Saldana would feel more comfortable and less frightened. Defendant told Saldana that he arranged the meetings and had talked to Saldana before. Saldana testified that he recognized defendant's voice as that of "Jake". Defendant did not like the Wendy's location and wanted another for the actual transaction, since they had not brought the cocaine with them. It was agreed that Zaiber would ride with Saldana and follow defendant and Perez to another location. They went four blocks west to a Long John Silver's Restaurant. Zaiber

got back in the Charger and Perez told Saldana to be back at 8:00 p.m. Saldana then went to obtain money for the transaction.

When Saldana returned to the Long John Silver's parking lot, he saw the Dodge Charger. Saldana started to pull into a handicapped parking spot and Perez motioned him away. He and Perez then went into Long John Silver's Restaurant to join Zaiber and defendant. They ordered food and Perez told Saldana to come inside. Saldana sat in the Charger on the passenger side of the front seat. Perez moved the car next to Saldana's undercover vehicle and told Saldana the cocaine was under the front seat. Saldana reached under it and pulled out a brown shopping bag containing two plastic bags with a white powder inside, later determined to be cocaine. Saldana asked about the possibility of taking some cocaine on credit and selling it for Perez. Saldana asked Perez in Spanish how much he wanted for a kilogram of cocaine. Saldana took the package to his car to get the money. Then he gave the "buy" signal to his surveillance team. Perez was arrested, as were defendant and Zaiber who were still inside the restaurant.

After extensive testimony from members of the surveillance team, the prosecution rested and Perez took the stand. Perez stated that he had known defendant for eight years and was his friend, living four blocks away. He knew Zaiber by sight from purchasing lottery tickets and other items at the party store, but did not have the same relationship with Zaiber as he had with defendant. On November 4, 1982, the date of the transaction involved herein, he went with defendant to a junkyard to buy a windshield for his stationwagon. Afterwards, they returned to Perez's home at about 7:00 p.m. He gave defendant a ride home

and stopped at Zaiber's Party Store so Perez could buy lottery tickets. Zaiber sold him the tickets. According to Perez he saw a bunch of zip-lock plastic bags on the floor and picked them up, placing them on the counter. As they left, defendant asked Perez if they could give Zaiber a ride to Greenfield, and Perez agreed. Zaiber told Perez to go to a Wendy's because he was meeting someone. On the way, Perez and defendant resolved that they would later get some fish at Long John Silver's. At Wendy's, Zaiber instructed Perez to park next to Saldana's Corvette. Zaiber got out and got into the car with Saldana. Defendant and Perez then went to Long John Silver's to get dinner. According to Perez, Saldana never entered Perez's car and they never discussed cocaine at Wendy's.

Perez further testified that while he and defendant were at Long John Silver's Saldana pulled in. Zaiber asked Perez to take him back to the party store in return for dinner and $5 for gas. Perez agreed and they returned to the party store. Perez and defendant got gas nearby and picked Zaiber up but did not go into the store. Zaiber got into the back seat carrying a big brown bag that he said contained beer. Perez stated that the bag was still in the car when he got it back from the police, although it was not referred to in any of the police testimony. When they got to Long John Silver's, he parked over a handicapped parking spot. They went inside to order. Zaiber told him to go out and look for Saldana. When Perez did, he saw the Corvette and directed Saldana away from the handicapped spot. Saldana and Perez then went inside. Perez came out again to move his car, since he was parked illegally. He started the car and Saldana got in, asking for some beer. Perez backed

the car up and parked next to Saldana's car, whereupon Saldana got out and pulled a revolver. Perez was arrested. He saw that Saldana was carrying a small brown bag at the time. Perez stated he did not know Zaiber was negotiating a drug transaction with Saldana, nor did he know how any drugs could have gotten into his car.

Defendant testified that he had worked at Chrysler for 10 years and knew Perez through his employment. He had known Zaiber for about a year and a half, since the party store was directly behind his house. Defendant testified that he had spent the day with Perez looking for a windshield. They went to get one at 5:30 p.m., returned to Perez's house for about a half an hour, and then Perez proceeded to take defendant home, stopping along the way at the party store to buy lottery tickets. Defendant testified that at the store Zaiber asked him for a ride but, because his license had been suspended, defendant told Zaiber that he would ask Perez, who agreed to give Zaiber a ride.

Zaiber wanted to go to Wendy's. According to defendant, Saldana never got into Perez's car. Defendant and Perez then went to Long John Silver's where Saldana pulled up and Zaiber requested a ride back to the party store in exchange for gas money and the meal. He took Zaiber to the party store and bought gas. Thereafter, they picked Zaiber up and returned to Long John Silver's, all three going in to get fish. Saldana came in, but defendant was not aware of his leaving. Defendant stated that the next thing he knew he was being arrested at the counter by several police officers with shotguns. Defendant testified that he had never arranged any cocaine transactions, nor did he have any phone conversations with Saldana or arrange to meet him at Wendy's.

## Entrapment

Defendant first claims that his conviction should be overturned because he was entrapped. We disagree.

Michigan has adopted the objective test for entrapment, focusing on whether the actions of the police were so reprehensible under the circumstances that public policy will not permit defendant's conviction to stand. *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973). The purpose of the entrapment doctrine is to deter unlawful police activities and preclude judicial approval of impermissible government conduct. *People v D'Angelo,* 401 Mich 167, 172-173; 257 NW2d 655 (1977). The defendant's guilt or innocence is irrelevant. *Id.,* p 179. The defendant has the burden of showing by a preponderance of the evidence that he was entrapped, and the lower court's findings will not be disturbed unless clearly erroneous. *Id.,* pp 180-183.

The police conduct which defendant regards as entrapment was directed at Zaiber. A threshold question is whether defendant has standing to argue the entrapment issue. This Court has held that a defendant lacks standing to raise the entrapment defense where an informant's activities were directed only at a codefendant and were not within the knowledge of the defendant, whose furnishing of the controlled substance appeared to be solely to conduct an illegal enterprise for profit. *People v Soltis,* 104 Mich App 53, 55; 304 NW2d 811 (1981), *lv den* 411 Mich 1037 (1981). On the other hand, where charges against a defendant and codefendant arose from the same impermissible police conduct, it was proper for a trial court to apply its entrapment findings to both defendants. *People v Weatherford,* 129 Mich App 359;

341 NW2d 119 (1983), *lv den* 417 Mich 1100.33 (1983). In the instant case, Saldana sought to find Zaiber's sources, who he ultimately concluded were defendant and Perez and who were aware of Saldana's interest in purchasing cocaine. Since defendant jouned in Zaiber's motion to dimiss for entrapment, we address this issue.

In the case *sub judice,* Saldana testified at a separate evidentiary hearing. His initial contact with Zaiber came through a cocaine purchase arranged by the Dearborn Police Department. Although Saldana contacted Zaiber on his own and asked to purchase "a couple of grams" of cocaine, later going to Zaiber's party store on his own initiative, no overreaching occurred in completing the transaction inasmuch as Zaiber maintained contact with Saldana. Moreover, Saldana contacted Zaiber upon the latter's insistence, and no special friendship was developed and exploited here, as was the case in *People v Soper,* 57 Mich App 677; 226 NW2d 691 (1975), *lv den* 394 Mich 822 (1975), and *People v Letts,* 122 Mich App 135; 332 NW2d 438 (1982). Even though Saldana thought that he was more than just an everyday friend to Zaiber, Zaiber did not trust Saldana enough to take him to his source, so that Zaiber's actions cannot be said to have been induced by reprehensible police conduct.

After several phone calls and Zaiber's initial refusal to sell because his partner had backed out of the deal, Saldana told Zaiber that he had another source to get his cocaine, whereupon Zaiber contacted Saldana and a transaction was eventually arranged. There was also testimony that Zaiber had suggested early on that Saldana could make $1,000 a week by reselling the cocaine. Zaiber had also offered to trade cocaine for Saldana's undercover vehicle and told him that a large

shipment of cocaine would arrive on November 3, 1982. Thus, the instant case is also unlike *People v Killian,* 117 Mich App 220; 323 NW2d 660 (1982), *lv den* 414 Mich 944 (1982), where the crime was completely manufactured by the police in that they knew that the defendant did not sell cocaine.

Despite some facts which might support an entrapment defense under prior case law, we do not review this case on a clean slate. The lower court found no entrapment and we cannot say the Saldana's conduct was so reprehensible as to make the lower court's findings clearly erroneous. In *Letts, supra,* this Court noted that the objective test of entrapment does not preclude the use of undercover agents; and, in *Killian, supra,* p 224, the Court did not question "the propriety of the tactic of manufacturing a drug sale where a legitimate investigative purpose is served", but warned against the use of the manufactured crime as a basis for conviction. Here, it appears that Zaiber was encouraging Saldana to set up his own operation and notified Saldana that a larger shipment was arriving. Under all the circumstances, the instant case is sufficiently distinguishable from the above-cited cases.

## SUFFICIENCY OF THE EVIDENCE

Defendant next asserts that there was insufficient evidence to convict him because even the knowledge that the offense was being planned or committed is insufficient to establish that he aided, abetted, or assisted in the crime. Defendant concludes that proof beyond a reasonable doubt requires evidence in the record which negates every reasonable theory consistent with defendant's innocence and that such was not established below.

Defendant was convicted of violating MCL

333.7401(1), (2)(a)(ii); MSA 14.15(7401)(1), (2)(a)(ii), which prohibits the manufacture, delivery or possession with intent to manufacture or deliver cocaine in an amount of 225 grams or more, but less than 650 grams, upon conviction of which the offender shall be imprisoned for not less than 20 years nor more than 30 years. Defendant was charged as an aider and abettor, since he was not directly responsible for the delivery to Saldana.

Aiding and abetting the commission of a crime requires that one take conscious action to make the criminal venture succeed. *People v Wright (On Remand),* 99 Mich App 801, 820; 298 NW2d 857 (1980), *lv den* 410 Mich 854 (1980).

"In criminal law the phrase 'aiding and abetting' is used to describe all forms of assistance rendered to the perpetrator of a crime. This term comprehends all words or deeds which may support, encourage or incite the commission of a crime. It includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary." *People v Palmer,* 392 Mich 370, 378; 220 NW2d 393 (1974).

At issue here is whether there was sufficient evidence that defendant aided and abetted in the delivery of cocaine.

In reviewing the evidence most favorably to the prosecution, *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), we find sufficient evidence. Defendant was in Long John Silver's during the actual buy. Saldana testified that, at Wendy's that evening, defendant told him that Zaiber was along to make Saldana more comfortable, and that it was defendant who arranged the meetings and would pick the location for the actual deal. According to Saldana, defendant told him that he had talked to Saldana on the phone earlier, when the

deal was arranged. Of most importance, there was direct evidence from Saldana that he recognized defendant's voice from the earlier conversation. Upon this testimony a jury could find defendant guilty beyond a reasonable doubt.

We need not address defendant's contention that in a case involving purely circumstantial evidence the people must present evidence rebutting all reasonable hypotheses consistent with innocence, since, here, there was direct evidence of guilt. *People v Fordham,* 132 Mich App 70, 75-76; 346 NW2d 899 (1984). In any event, *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), relied upon by defendant for the proposition that proof by circumstantial evidence cannot support a conviction where the inferences therefrom will support other rational conclusions, see, also, *People v Jablonski,* 70 Mich App 218; 245 NW2d 571 (1976), has since been criticized by this Court. In *People v Edgar,* 75 Mich App 467; 255 NW2d 648 (1977), this Court noted that it is "sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense may produce". 75 Mich App 474. See, also, *People v Johnson,* 137 Mich App 295, 303; 357 NW2d 675 (1984), and the cases cited therein. Consequently, we find defendant's contention to be without merit since we believe *Edgar, supra,* represents the more reasonable approach and since there was direct evidence supporting defendant's guilt.

For the same reasons, we reject defendant's contention that the examining magistrate abused his discretion in binding defendant over for trial. There was testimony at the preliminary examination not only that defendant was present at the transaction, but that he told Saldana that he was the "caller" with whom Saldana earlier had spo-

ken and who had arranged the meeting at Wendy's. There was no abuse of discretion. Probable cause was established. See *People v King,* 412 Mich 145; 312 NW2d 629 (1981).

### PROSECUTORIAL MISCONDUCT AND ERROR

Defendant also claims that the prosecutor improperly vouched for the credibility of his witnesses and made a "civic duty" appeal to the jury. Defendant, however, failed to object to these comments made during closing argument or to request a curative instruction. Under these circumstances, appellate review is precluded unless a miscarriage of justice will result. *People v Duncan,* 402 Mich 1, 15-17; 260 NW2d 58 (1977). Inasmuch as certain of the prosecutor's statements were but responses to defense counsel's remarks during closing argument and prejudice to defendant could have been cured through a proper request for an instruction, we find no reversibe error. *Id.* The statements were not of such nature that refusal to address this claim of error would result in injustice.

Next, defendant assigns as error the introduction into evidence of testimony concerning Saldana's truthful character. Defendant contends that this testimony was offered to bolster his credibility even though no attack had been made on his character through reputation evidence.

MRE 608(a) provides:

"Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence of reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness had been attacked by reputation evidence or otherwise."

Before testimony on Saldana's reputation was introduced, counsel for Perez objected, arguing that, while impeachment had been attempted, no attack had been made on Saldana's character. The trial court disagreed and overruled the objection. Following further objection based on lack of foundation, the witness was asked if he was familiar with Saldana's reputation among those who had come into contact with his work in the State Police Criminal Investigation Section community, to which the witness testified that Saldana had a reputation for being truthful and honest.

Throughout the trial the defense vigorously cross-examined Saldana, suggesting that if he failed to arrest somebody it might look as though he was not doing his job and would inhibit his chances for a promotion and higher pay. The defense also brought out that the nature of Saldana's work required him to be "an adept liar". Defense counsel asked if that ever "transcen[ed] into other situations other than undercover capacities". Furthermore, he brought out the fact that no one could confirm Saldana's story because no one listened to Saldana's phone conversations with Zaiber and that Saldana's report omitted some of the transactions. Prior inconsistent statements by Saldana were also introduced. We believe that this constituted an attack on Saldana's character for truthfulness and veracity, thereby making admissible testimony to the contrary. MRE 608(a)(2). Compare *People v Sylvester Smith,* 90 Mich App 20, 25; 282 NW2d 227 (1979), *lv den* 406 Mich 996 (1979).

Defendant next complains that the prosecutor improperly elicited testimony that defendant was unemployed where the lower court had previously ordered defendant's employment status stricken from the fingerprint cards admitted into evidence.

At the suggestion of Perez's counsel, the parties
in the case at bar agreed early on that reference
to defendants' unemployment should be deleted
from the fingerprint cards admitted into evidence.
When Perez took the stand, he testified that he
was currently employed and knew defendant from
work. Later, defendant testified that he worked
with Perez, and stated, "I've been working ten
years at Chrysler". On cross-examination, the pros-
ecutor asked defendant if he went to work on the
day in question. Defendant replied, "I been laid off.
I work at Chrysler, but I've been laid off", and
added that, at the time, Perez had also been laid
off. After the defense had rested, Perez's counsel
objected to this questioning, pointing out that the
fingerprint cards had been altered to avoid this
very situation.

While the questioning here may have gone into
an improper area of discussion, the reference was
brief, not repeated and not objected to by defen-
dant. Moreover, the testimony of both Perez and
defendant hinted that they were employed on the
date in question. In *People v Thomas,* 86 Mich
App 752, 765-766; 273 NW2d 548 (1978), *lv den* 406
Mich 971 (1979), we held that the defendant had
not suffered "a miscarriage of justice", since the
testimony formed only a small part of the testi-
mony taken and the evidence of defendant's guilt
was overwhelming. It was further suggested that
such questioning might be permissible if defendant
opened the door for it, which arguably occurred
here. For these same reasons, we do not believe
that admission of this testimony constituted re-
versible error.

As a further claim of error, defendant maintains
that the prosecutor had two written discovery
orders but failed to disclose to defendant until
trial that there was another suspect named

"Jake", whose house the police were watching. Instead, they attempted to identify defendant as "Jake", which, defendant concludes, denied him due process of law.

Defense counsel moved for a dismissal since the prosecutor had failed to disclose this information despite several discovery orders. He argued that, since defendant was identified as "Jake", the fact that the police knew of another suspect with that name created a duty to disclose. Apparently, the police had placed "Jake's" home under surveillance.

Even if the prosecutor violated a discovery order, which we do not concede, the defense can point to no prejudice. Defendant does not indicate how the evidence, if any existed, might have been exculpatory, beyond the fact that Zaiber's uncle was named Jacob and Zaiber's partner said his name was "Jake". Nothing appears to have resulted from any investigation of Jake. Moreover, the subject was raised by counsel for Perez and was extensively elaborated at trial, so that it cannot be said the existence of another "Jake" raised a reasonable doubt in any juror's mind. There was no error in denying defendant's motion to dismiss. See *People v Hatch,* 126 Mich App 399, 402-403; 337 NW2d 79 (1983).

## CONSTITUTIONALITY OF NARCOTICS STATUTE

Penultimately, defendant challenges MCL 333.7415; MSA 14.15(7415), as being in violation of the separation of powers in that it usurps the functions of the executive branch by taking away the prosecutor's authority to plea-bargain with respect to certain drug offenses, thereby denying defendant the opportunity to take advantage of possible plea bargains or reduced charges.

Section 7415(1) provides that upon arraignment of a defendant on certain drug offenses, the "examining magistrate shall not dismiss the case upon motion of the prosecuting attorney unless the dismissal is with prejudice", and that the magistrate may not permit the prosecutor to reduce the charge against the defendant. Section 7415(2) further provides that at the circuit court level the court also shall not "dismiss the case upon motion of the prosecuting attorney unless the dismissal is with prejudice", or accept any plea to a reduced charge.

"Section 7415 was enacted to foreclose the use of a reduction in charges in negotiating guilty pleas. This reflects the Legislature's goal of limiting the availability of guilty plea options in cases where serious drug offenses are charged." *People v Kidd,* 121 Mich App 92, 95; 328 NW2d 394 (1982), *lv den* 417 Mich 1069 (1983).

Plea bargaining is " 'an essential component of the administration of justice' ". *People v Killebrew,* 416 Mich 189, 197; 330 NW2d 834 (1982). The prosecutor's discretion in this area, however, is not unlimited. While defendant correctly notes the Const 1963, art 3, § 2, provides that no branch of government "shall exercise powers properly belonging to another branch except as expressly provided in this constitution", Const 1963, art 7, § 4, states that each county shall elect a prosecuting attorney "whose duties and powers shall be provided by law". Accordingly, it is within the power of the Legislature to limit prosecutorial discretion in certain situations.

Finally, defendant attacks his sentence as violative of due process and equal protection and as so inappropriate as to constitute an abuse of discretion. Defendant reasons that, because his part in

this incident was minimal at best, a compulsory prison sentence of 20 years for a nonviolent crime, without consideration of his individual personality and history, is improper. Pursuant to MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii), the conviction for the offense involved herein requires that the offender "be imprisoned for not less than 20 years nor more than 30 years".

Each of defendant's constitutional challenges to § 7401(2)(a)(ii) has been addressed and rejected by this Court. *People v Taormina,* 130 Mich App 73, 84-85; 343 NW2d 236 (1983), *lv den* 419 Mich 858 (1984), *People v Harman,* 124 Mich App 93, 98-100; 333 NW2d 591 (1983), *lv den* 417 Mich 1100.45 (1983), and *People v Kaigler,* 116 Mich App 567; 323 NW2d 486 (1982), dealt with challenges based on due process and equal protection. *People v Ward,* 133 Mich App 344, 357; 351 NW2d 208 (1984); *People v Puertas,* 122 Mich App 626, 630; 332 NW2d 399 (1983), *lv den* 417 Mich 1056 (1983), and *People v Kaigler, supra,* rejected challenges that the penalty provisions constituted cruel and unusual punishment. Moreover, *People v Cortez,* 131 Mich App 316, 334-335; 346 NW2d 540 (1984), held that sentencing an aider and abettor to life imprisonment, the same as a principal, did not constitute cruel and unusual punishment. Accordingly, defendant's contentions to the contrary are without merit.

Affirmed.

BEASLEY, J., concurred.

T. M. BURNS, J. *(dissenting).* This case arises out of the alleged sale of cocaine to Terry Saldana, a Michigan state trooper. Defendant Matthews and his codefendant Andres Perez were jointly tried

before a jury and convicted of delivery of between 225 and 650 grams of a mixture containing cocaine. Matthews and Perez were each sentenced to a term of 20 to 30 years imprisonment. Another codefendant, Namir Zaiber, who allegedly setup the transaction, was convicted of delivery of less than 50 grams of cocaine following a separate bench trial before the same judge who presided over Matthews's and Perez's jury trial. Zaiber was sentenced to a term of 4 to 20 years imprisonment.

Defendant Matthews raises three issues on which I feel his conviction should be reversed.[1] First, I would reverse defendants conviction because of the error made in the prosecutor's closing argument, even though defendant did not specifically object to the error. Defendant vigorously attacked the veracity of Officer Saldana throughout the trial. In closing argument, the prosecutor attempted to bolster the officer's credibility:

"If you disbelieve the testimony of this officer, when you leave here, you should not only acquit the defendants in this case, but you'd better get on your phone to your congressmen and to anybody who is represented with the state police and say, 'We've got one bad apple. He's lying to try to put somebody into jail'. I would expect nothing less than an acquittal if you do not believe the testimony of this officer."

The prosecutor essentially argued that the officer should be fired if he lied to secure a conviction and that it was the jury's duty to seek the removal of the officer if they acquitted defendant. This comment was highly prejudicial and was not based

[1] I feel that defendant's issue regarding entrapment presents a close issue for reversal, but in light of the three other issues I discuss, which present clearer examples of reversible error, I do not discuss the merits of defendant's claim of entrapment.

on any inference from the evidence.[2] I do not believe that a cautionary instruction could have cured this error which resulted in a miscarriage of justice. Therefore, I feel that the lack of an objection does not preclude appellate review.[3] Officer Saldana's testimony was vital to the people's case and there was a sharp conflict between his testimony and that of defendant's. Considering these circumstances, I feel that it was reversible error to argue that the jury had a duty to seek Officer Saldana's dismissal if they acquitted defendant.

I also feel that the prosecutor's attempt to show that Officer Saldana had a good reputation for truthfulness went beyond the limits of MRE 608.[4] The character witness, another police officer, testified that as far as he was concerned, and from what he heard from others, Officer Saldana was fair, truthful and honest. Evidence of a witness's reputation as to honesty is not admissible to show that a witness had a good reputation for truthfulness. *Calkins v Ann Arbor R Co,* 119 Mich 312; 78 NW 129 (1899); *Leonard v Pope,* 27 Mich 145 (1873). The prosecutor's character witness, therefore, erred in testifying that Officer Saldana was honest. I also believe that this witness's personal opinion about Officer Saldana's credibility does not fall within the scope of permissible character testimony. *People v Ellerhorst,* 12 Mich App 661, 671; 163 NW2d 465 (1968).

Finally, I believe it was reversible error for the prosecutor to elicit testimony that defendant was laid off from his job at Chrysler at the time the

---

[2] A prosecutor may properly argue that a police officer's testimony is credible if the argument is based on permissible inferences based on evidence admitted at trial. *People v Kedziora,* 125 Mich App 150; 336 NW2d 460 (1983).

[3] *People v Jancar,* 140 Mich App 222; 363 NW2d 455 (1985).

[4] I agree with the majority that defendant made Officer Saldana's character an issue at trial.

alleged sale of cocaine occurred. In *People v John-son,* 393 Mich 488, 496; 227 NW2d 523 (1975), the Supreme Court stated:

"Obviously neither proverty nor unemployment is an element of the crime of carrying a concealed weapon. Either a poor man or a rich man may be either guilty or innocent of carrying a concealed weapon. Likewise whether a man is employed or unemployed is not proof or partial proof of carrying a concealed weapon. Neither does defendant's poverty or unemployment affect his testimonial credibility in this case. In short, these things neither in law nor in logic are evidence of defendant's guilt or innocence or his tendency to lie or tell the truth."

Likewise in the instant case, defendant's unemployment was not an element the prosecutor needed to prove to establish the crime of delivery of cocaine. Since this case was basically a credibility contest, I feel that the prosecutor's question resulted in manifest injustice.[5] The evidence of defendant's guilt was not overwhelming and this evidence of defendant's unemployment might well have persuaded the jury that defendant committed the crime to raise money.

Considering these three errors, I would reverse defendant's conviction.

[5] Defendant raised his objection to this question at the close of his case. Since the objection was not timely, appellate review is precluded unless manifest injustice would result from a failure to review this issue. The majority argues that defendant hinted that he was employed at the time of the alleged sale. Defendant presented testimony that he knew his codefendant because they worked for Chrysler and had been with Chrysler for 10 years. I do not think this opened the door to allow the prosecutor to introduce this irrelevant evidence.