PEOPLE v MULKEY

Docket No. 83768. Submitted July 2, 1986, at Detroit. Decided August 4, 1986. Leave to appeal denied, 426 Mich 874.

Defendant, Gary L. Mulkey, was charged with receiving and concealing stolen property over $100, Wayne Circuit Court, Claudia H. Morcom, J. The court granted defendant's motion to quash the information on the ground of entrapment. The people appealed. *Held:*

The Court of Appeals will reverse a trial court's decision on the issue of entrapment only where the trial court's findings of fact are clearly erroneous or where the trial court made an erroneous application of the law. Entrapment occurs where the police officers' or police agents' involvement in criminal activities goes beyond the mere offering of an opportunity to commit the crime and when their conduct is of a kind that could induce or instigate the commission of a crime by a person not ready and willing to commit it. If the actions of the police were so reprehensible under the circumstances, then, as a matter of public policy, a conviction should not be permitted to stand. The evidence supported a finding that defendant was entrapped.

Affirmed.

1. CRIMINAL LAW — ENTRAPMENT — APPEAL.

The Court of Appeals will reverse a trial court's decision on the issue of entrapment only where the trial court's findings of fact are clearly erroneous or where the trial court made an erroneous application of the law.

2. CRIMINAL LAW — ENTRAPMENT — OBJECTIVE TEST.

Entrapment occurs where the police officers' or police agents' involvement in criminal activities goes beyond the mere offering of an opportunity to commit the crime and when their conduct is of a kind that could induce or instigate the commission of a crime by a person not ready and willing to commit it; if the actions of the police were so reprehensible under the

REFERENCES

Am Jur 2d, Criminal Law §§ 202-209.
See the annotations in the Index to Annotations under Entrapment.

circumstances, then, as a matter of public policy, a conviction should not be permitted to stand.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy Chief, Civil and Appeals, and *A. George Best II,* Assistant Prosecuting Attorney, for the people.

*Arthur S. Brand* and *Rose Mary C. Robinson,* for defendant.

Before: GRIBBS, P.J., and D. F. WALSH and BEASLEY, JJ.

BEASLEY, J. Defendant, Gary Lynn Mulkey, was charged with receiving and concealing stolen property over $100, specifically, a front-end clip and cab section of a 1983 Chevrolet, in violation of MCL 750.535; MSA 28.803. The prosecution appeals from a trial court order quashing the information on the ground that defendant was entrapped. The order was entered after an evidentiary hearing on defendant's motion.

On appeal, we reverse a trial court's decision on entrapment only where the court's findings of fact are clearly erroneous or where the court made an erroneous application of law.[1] A defendant carries the burden of proof at an entrapment hearing.

Unlike the federal courts, Michigan courts apply an objective test for determining whether entrapment has occurred.[2] Under this test, the focus is on the nature of the police conduct. When the police officers' or police agents' involvement in criminal activities goes beyond the mere offering of an opportunity to commit the crime and when their

[1] *People v D'Angelo,* 401 Mich 167; 257 NW2d 655 (1977); *People v Weatherford,* 129 Mich App 359; 341 NW2d 119 (1983).

[2] *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973).

conduct is of a kind that could induce or instigate the commission of a crime by a person not ready and willing to commit it, then entrapment has occurred. If the actions of the police were so reprehensible under the circumstances, then, as a matter of public policy, we do not permit the conviction to stand.

The objective standard for entrapment in Michigan does not automatically preclude the use of undercover agents, but only precludes conduct so reprehensible that it should not be condoned.[3] Essentially, the character or propensities of a particular defendant are irrelevant to a determination of whether entrapment has occurred.[4] To find entrapment, there must be a causal connection between the reprehensible acts of the police and the criminal acts of defendant.[5]

Entrapment has been found where a police officer exploited a childhood friendship, pretending that he was an addict to play on defendant's friendship and sympathy.[6] We have found entrapment where an undercover officer received a sham sentence to a county jail, during which time he gained defendant's trust and persuaded defendant to sell him drugs following their release. In such a case, the police did more than provide defendant an opportunity to commit a crime; rather, they manufactured it.[7] We have found entrapment where a police officer combined the exploitation of an earlier friendship with an offer of monetary gain.[8] In *People v White*,[9] the officer sought out

[3] *People v Alford,* 405 Mich 570; 275 NW2d 484 (1979).

[4] *People v Duis,* 81 Mich App 698; 265 NW2d 794 (1978).

[5] *People v Barker,* 97 Mich App 253; 293 NW2d 787 (1980), rev'd on other grounds 411 Mich 866 (1981).

[6] *People v Soper,* 57 Mich App 677; 226 NW2d 691 (1975), lv den 394 Mich 822 (1975).

[7] *People v Letts,* 122 Mich App 135, 140-141; 332 NW2d 438 (1982).

[8] *People v Killian,* 117 Mich App 220; 323 NW2d 660 (1982), lv den 414 Mich 944 (1982).

defendant and asked to purchase narcotics. When defendant did not show up, the officer again searched him out. When defendant said he had not obtained narcotics because he did not have a ride, the officer gave him one. Later, two officers gave defendant a ride from Oscoda to Detroit and back. We held that defendant was entrapped as a matter of law.

In the within case, the record supports the trial court's finding that defendant was entrapped by the police. First, Officers MacDiarmid and Joker both stated that a friendship developed between them and defendant. Officer MacDiarmid testified that he and defendant frequented restaurants and went to the gun range together. Furthermore, on several occasions, he met defendant's parents, met defendant at his home and had defendant repair his brother's car. Finally, he sold defendant a motorcycle on credit. Officer Joker, a Canton Township Police Lieutenant, had defendant repair his car several times, visited defendant at his home on several occasions and sold defendant two pieces of property.

Second, while defendant was acting as a police informant, no guidelines or procedures were set up to control or govern his conduct. Lt. Joker testified that Officer MacDiarmid, who worked under Joker, recruited defendant as an informant. Lt. Joker did not recall ever speaking to defendant or giving him instructions as to his role as an informant. Officer MacDiarmid testified that it was the customary practice of defendant to notify MacDiarmid once he received possession of stolen vehicles. Defendant helped Officer MacDiarmid recover between seventeen and twenty-five stolen vehicles. Michigan State Police Sgt. James Gavigan, who

[9] 411 Mich 366; 308 NW2d 128 (1981).

was in charge of this case, testified that he was assigned to the auto-squad section subsequent to Officer MacDiarmid's joining the squad. However, Sgt. Gavigan testified that he did not approve of the methods used by Officer MacDiarmid.

Third, Lt. Joker testified that he knew defendant was upset because defendant felt the police owed him money for funds he expended to obtain these various stolen vehicles. Defendant claimed that the police owed him approximately $6,000. Lt. Joker testified that defendant had requested reimbursement of him on several occasions. Officer MacDiarmid testified that defendant requested reimbursement about three times. Officer MacDiarmid also testified that he contacted an insurance company and told them that he had information that their vehicle was going to be "chopped." The insurance company wrote him a check for $500 which he in turn gave to defendant. On another occasion, defendant was paid $100 from the Michigan State Police Informant Fund. In February or March of 1983, defendant told Officer MacDiarmid that he had just purchased a 1983 pickup truck which was stolen from Marty Feldman Chevrolet and that he wanted to be reimbursed. Officer MacDiarmid contacted the dealership and Marty Feldman indicated to him that he would pay half the costs of recovering the vehicle. Officer MacDiarmid informed defendant of this conversation with Feldman but, once the vehicle was recovered, Feldman refused to pay.

Fourth, even after the police said they suspected that defendant was untruthful, they were willing to use defendant as an informant. Sgt. Gavigan testified that defendant supplied him with information that a person named Dickerson had possession of three stolen vehicles. Upon being arrested, Dickerson stated that he purchased the vehicles

from defendant. Around June, 1983, Sgt. Gavigan tried unsuccessfully to obtain warrants against defendant. However, in October, 1983, Sgt. Gavigan willingly participated in a meeting with defendant in which the plans were formulated for defendant's assistance in the recovery of two stolen 1983 trucks.

In summary, the subject matter of the instant charges against defendant was receiving and concealing the front clip and cab section from a two-tone blue Chevrolet pickup truck. Defendant informed the police that he was in possession of these parts, as was the "customary practice." Officer MacDiarmid advised defendant to hold onto these "stolen parts" until the rest of the parts for this vehicle could be recovered. The police knew that defendant was dissatisfied that he was not being reimbursed for the money he was paying out to obtain stolen vehicles. On October 25, 1983, when defendant went with Officer MacDiarmid to Midwest Fleet Services to try to obtain stolen vehicles, defendant informed MacDiarmid that he had sold these parts. However, Officer MacDiarmid knew that defendant had already sold them because they were already recovered by the police.

We are satisfied that these actions of the police were reprehensible and fully support a finding that defendant was entrapped.

Affirmed.