# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

HORACIO RODRIGUEZ,

       Defendant-Appellant.

UNPUBLISHED
January 23, 2018

No. 335239
Kent Circuit Court
LC No. 15-009467-FH

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant, Horacio Rodriguez, appeals by right his jury convictions of possession with the intent to distribute 50 grams or more, but less than 450 grams, of any mixture containing cocaine (possession with the intent to distribute 50 to 449 grams of cocaine), MCL 333.7401(2)(a)(*iii*); conspiracy to commit possession with the intent to distribute 50 to 449 grams of cocaine, MCL 750.157a(a); and possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*). The trial court sentenced Rodriguez to serve concurrent sentences of 66 months to 20 years in prison for his possession with the intent to distribute 50 to 449 grams of cocaine and conspiracy convictions. Additionally, the trial court sentenced Rodriguez to time served for his conviction of possessing less than 25 grams of cocaine. For the reasons set forth in this opinion, we affirm defendant's conviction and sentence, but remand the matter to the trial court for the ministerial task of correcting the judgment of sentence and the presentence investigation report (PSIR).

## I. BACKGROUND

This appeal arises from a series of cocaine sales that were made to members of the West Michigan Enforcement Team (WMET). Following the arrest of an informant, members of the team turned their attention to Herberto Guzman. In August 2015, a Spanish speaking member of the WMET purchased two ounces of cocaine from Guzman. On September 2, 2015, another purchase of cocaine was set up. Before the purchase, Guzman told a WMET officer that his supplier "would show up beforehand to ensure that the dope was actually there." Members of the WMET put Guzman's house under surveillance and saw a teal and silver Ford Ranger arrive at Guzman's house at about 8 p.m. The officers obtained the license plate information and confirmed that it was defendant in the truck from his license photo.

-1-

Another cocaine purchase was agreed to by WMET and Guzman on September 10, 2015. That purchase proceeded in the same way. A week after that purchase, a member of WMET called Guzman and asked if he would sell him six ounces of cocaine. Guzman was hesitant and stated that he could sell him four ounces. Guzman instructed the WMET officer to arrive at a certain time and said his supplier would drop off the cocaine before his arrival. Guzman told him that the arrangement would be better because they would not have to see each other so much.

A deputy with the Ottawa County Sheriff's Department assisted with surveillance of the purchase on September 15, 2015. He was positioned on an elevated parking ramp and used binoculars to watch the events. Just as during the previous surveillance, the deputy saw defendant's Ford Ranger pull into Guzman's driveway. Guzman leaned into the truck; he had a rag in his hand at the time. Shortly thereafter, a controlled purchase of four ounces of cocaine was made from Guzman.

A trooper with the Michigan State Police Department was asked to assist a multijurisdictional task force by performing a traffic stop for them on September 15, 2015. Shortly after being alerted by officers of WMET that defendant had left Guzman's house, defendant was stopped by the MSP. Following the stop, $3,303 in cash in was taken from defendant's front pocket. He also saw two cell phones in the truck.

Testimony from trial revealed that a portion of the $3,300 in cash found on Rodriguez was from the cash that WMET used to pay for the cocaine on September 2 and September 10. However, $2,163 of the cash did not match the funds used to make earlier purchases.

At trial, Guzman admitted to selling cocaine. He also admitted that he had told police that he had met defendant at a bar where defendant worked as security and that defendant had been supplying Guzman with cocaine for approximately two years.

Defendant testified that he never sold drugs to Guzman. He decided to sell his truck and he drove to Guzman's house on September 2, 2015, just to show him the truck. They discussed the price, and Guzman agreed to purchase it for $3,400. He drove to Guzman's home on September 15 to deliver the truck, but Guzman only had $3,300. Guzman told him he could get the rest later so he left. The jury rejected Rodriguez's defense and found him guilty as charged. Defendant was sentenced on August 29, 2016. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant first argues that the MSP trooper who stopped him did not have grounds to stop and search him after he left Guzman's home. Defendant argues that the trial court should have suppressed the evidence from the search. When reviewing a trial court's decision on a motion to suppress, this Court reviews de novo whether the trial court properly applied the law to the facts. *People v Slaughter*, 489 Mich 302, 310; 803 NW2d 171 (2011). This Court reviews the factual findings underlying the trial court's decision for clear error. *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006). However, because defendant failed to preserve this issue for appeal, we will review his claim for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant

must show that there was a plain or obvious error and that the error affected the outcome of the lower court proceedings. *Id.*

The United States and Michigan Constitutions both guarantee the right of persons to be free from unreasonable searches and seizures. See US Const, Am IV; Const 1963, art 1, § 11; *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). The Fourth Amendment prohibition against unreasonable searches and seizures applies equally to seizures of property and seizures of persons. *People v Gillam*, 479 Mich 253, 260-261; 734 NW2d 585 (2007). It is reasonable under the Fourth Amendment to arrest a suspect without a warrant if the officer has probable cause to believe that the suspect committed an offense. *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* Probable cause does not require certainty. The officer need only have information that reasonably leads him or her to believe that there is a probability or substantial chance of criminal activity. *Id.* at 111 n 11.

Similarly, a search without a warrant is generally considered unreasonable under the Fourth Amendment. See *People v Frederick*, 500 Mich 228, 235; 895 NW2d 541 (2017). Accordingly, police officers must normally obtain a search warrant before conducting a search or must establish that one of the limited exceptions to the warrant requirement applies. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). One exception to the search warrant requirement involves a search incident to arrest: "[a] search of a person incident to an arrest requires no additional justification." *Champion*, 452 Mich at 115. A search incident to arrest need not be made after formal arrest; the officer may conduct the search immediately before arrest so long as the officer had probable cause to arrest the suspect. *Id.* at 115-116. A search incident to arrest may also include the search of containers within the control area of the suspect. *Id.* at 115; see also *Arizona v Gant*, 556 US 332, 351; 129 S Ct 1710; 173 L Ed 2d 485 (2009). (Stating that officers may search a vehicle incident to the arrest of a recent occupant only if the arrestee was within reaching distance of the passenger compartment or it is reasonable to believe that the vehicle contains evidence of the offense of arrest).

As previously stated, on September 15, the MSP trooper was asked to assist a multijurisdictional task force; specifically, to "perform a traffic stop for them on that day." The trooper was given the details about the stop "earlier in the day" and knew that the other officers had a location under surveillance at the time. When advised by the officers who were conducting the surveillance that the vehicle had left the location, the trooper followed defendant and made the planned traffic stop. When asked how far it was from the place of the stop to the place where the "drug deal was to take place," the trooper estimated that he stopped defendant about a mile and half away. The trooper also stated on cross-examination that he acted as though it were a normal traffic stop and returned to his car to verify defendant's identity with the undercover officers. After he verified his identity, the trooper returned and asked defendant to get out of the truck and placed him in the back of his squad car.

The trooper's testimony indicates that he had been briefed about the investigation earlier in the day, understood that the investigators believed that defendant was a participant in a drug deal, and had been assigned the task of stopping Rodriguez after he left Guzman's house. The

trooper could reasonably rely on the information relayed to him by the investigators when determining whether to stop Rodriguez. See, e.g., *United States v Ventrosca*, 380 US 102, 110-111; 85 S Ct 741; 13 L Ed 2d 684 (1965). As such, the information available to the trooper was sufficient to "warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Champion*, 452 Mich at 115. Accordingly, the trooper could lawfully stop defendant to arrest him on suspicion of illegal drug trafficking. Once the trooper arrested defendant, he could lawfully search defendant and the passenger compartment of his truck. *Id.* at 115-116. See also, *Gant*, 556 US at 351. Accordingly, the trial court did not plainly err when it failed to sua sponte declare the search illegal and suppress the fruits of the search. *Carines*, 460 Mich at 763.

Defendant next argues that the WMET officer's decision to ask Guzman to sell him four ounces of cocaine rather than one ounce amounted to entrapment that increased defendant's minimum sentence. Defendant also argues that the trial court was unaware that it could consider the WMET officer's improper actions as a factor in support of a downward departure on his sentence. This Court reviews de novo whether the trial court properly determined that the police officers entrapped the defendant. *People v Vansickle*, 303 Mich App 111, 114; 842 NW2d 289 (2013). Because defendant did not preserve these claims of error for appeal, we review them for plain error affecting his substantial rights. *Carines*, 460 Mich at 763.

Michigan follows an objective test for determining whether the affirmative defense of entrapment applies to a given set of facts. See *People v Juillet*, 439 Mich 34, 53; 475 NW2d 786 (1991) (BRICKLEY, J.). In order to establish entrapment, Rodriguez had to show that the police officers engaged "in impermissible conduct that would induce an otherwise law-abiding person to commit" the crime under the circumstances or that the police officers engaged "in conduct so reprehensible that the court cannot tolerate it." *Vansickle*, 303 Mich App at 115 (quotation marks and citation omitted). Some federal courts have also held that outrageous police conduct designed to manipulate a sentencing factor may warrant a downward departure for purposes of sentencing under the federal sentencing guidelines. See, e.g., *United States v Terry*, 240 F3d 65, 71 (CA 1, 2001). Even assuming that defendant has standing to assert entrapment premised on actions directed at Guzman, see *People v Matthews*, 143 Mich App 45, 54; 371 NW2d 887 (1985), defendant has not established that the officers engaged in any impermissible conduct.

The evidence showed that Guzman was already in the business of selling two ounces of cocaine to his brother-in-law every week. WMET officers merely stepped into the brother-in-law's shoes. Further, the evidence showed that Guzman warned a WMET officer that he would have to increase the size of his purchases if he wanted to keep the same price. A WMET officer then suggested six ounces. Testimony indicated that Guzman balked at six ounces, but offered to sell the WMET officer four ounces. When the WMET officer arrived to make that purchase, Guzman told him that the increase was good because they would not have to see each other as much. Police officers do not engage in entrapment merely by providing a defendant with the opportunity to commit a crime, rather defendant must demonstrate that the officer's conduct rose to: "impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances . . . ." *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010). However, we cannot make such a finding in this case as the testimony indicated that during their interaction, the officers did not appeal to defendant's sympathy, offer him any unusually attractive inducements or excessive consideration, or use any other means to pressure

defendant to sell them cocaine. In summary, the undercover officers merely provided defendant with an opportunity to commit the crime, which is wholly insufficient to establish entrapment. *Vansickle*, 303 Mich App at 115. See also, *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002).[1]

Defendant next argues that his trial counsel did not provide effective assistance. This Court reviews de novo whether defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced his trial. *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012).

"To establish a claim ineffective assistance of counsel, the defendant must show that 'counsel's representation fell below an objective standard of reasonableness' under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Gioglio, 296 Mich App at 22, quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 St Ct 2052; 80 L Ed 2d 674 (1984). Under the first prong, defendant must identify those acts or omissions that he contends were not the result of reasonable professional judgment. *Gioglio*, 296 Mich App at 22. The reviewing court must then determine whether the identified acts or omissions were outside the wide range of professionally competent assistance under the totality of the circumstances. *Id.* In making this determination, reviewing courts must indulge a strong presumption that defense counsel's conduct fell within that range. The reviewing court must conclude that the act or omission at issue "fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id.* (quotation marks and citations omitted).

Defendant argues that his trial counsel should have moved to suppress the evidence that the MSP trooper obtained when he searched defendant after the stop on September 15. He also maintains that defense counsel should have argued entrapment. As previously discussed and decided, the trooper had probable cause to arrest defendant on September 15 and could lawfully search him incident to that arrest. Likewise, there was no evidence that the investigating officers engaged in any misconduct that could support a claim of entrapment. As such, it would have been futile to undertake either course of action. Defendant's counsel had no obligation to make a futile motion or raise a meritless defense. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). Similarly, because there was no evidence tending to suggest that WMET officers somehow caused defendant to engage in drug tracking on a larger scale than he would otherwise have been inclined to engage, his defense lawyer could reasonably conclude that asking for a sentencing departure on that basis would also be futile.

---

[1] On appeal, defendant cites the score under Offense Variable (OV) 15, see MCL 777.45(1)(c), as evidence that the WMET officer's conduct resulted in an enhanced sentence. Because he has not argued that the trial court improperly scored OV 15 and we conclude that there was no entrapment, we decline to address the proper score for this variable.

Accordingly, we conclude that defendant has not overcome the presumption that his trial counsel's decision to forego that argument fell outside the wide range of reasonable professional conduct. *Gioglio*, 296 Mich App at 22. Therefore, defendant is not entitled to relief on this issue.

Defendant also argues in the brief he submitted on his own behalf that it was a violation of double jeopardy to convict him of both simple possession and possession with the intent to distribute the same batch of cocaine. On appeal, the prosecutor notes that the trial court mistakenly sentenced Rodriguez for possession of less than 25 grams of cocaine, which was not the correct offense of conviction under Count 3. The prosecutor also concedes that defendant could not be convicted of both simple possession of 50 to 449 grams of cocaine and possession with the intent to distribute the same cocaine. As such, the prosecutor agrees that that conviction must be vacated. See *People v Meshell*, 265 Mich App 616, 633-634; 696 NW2d 754 (2005). Accordingly, we vacate defendant's conviction of possession of 50 to 449 grams of cocaine.

Defendant also argues that his trial counsel's failure to raise the double jeopardy issue amounted to ineffective assistance and that he is entitled to be resentenced because his score under Prior Record Variable (PRV) 7 should be reduced by 10 points after this Court vacates his conviction. We need not address his ineffective assistance claim because we have already granted him relief. Finally, we agree that PRV 7 should be reduced to a score of 10, see MCL 777.57(1), but because the change does not alter the guidelines range, he is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## III. CONCLUSIONS

We affirm defendant's convictions of possessing 50 to 449 grams of cocaine with the intent to distribute and conspiracy, but vacate his conviction of simple possession of 50 to 449 grams of cocaine. We also vacate defendant's judgment of sentence to the extent that it inaccurately states that defendant was convicted of possessing less than 25 grams of cocaine. We further remand this case to the trial court for the ministerial task of correcting the judgment of sentence and the PSIR to accurately reflect these changes.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra